**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| ANDRE MAGRUDER, | ) | CASE NO: 1:19CV1980 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| GRAFTON CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND** |
| | **)** | **RECOMMENDATION** |
| | ) | |

This case is before the Court upon referral for general pretrial supervision. (Doc. No. 5.) Currently pending is Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. No. 7.)

For the following reasons, it is recommended that Defendant's Motion to Dismiss (Doc. No. 7) be GRANTED.

**I. Procedural Background**

On August 29, 2019, Plaintiff Andre Magruder, proceeding *pro se*, filed a Complaint against Grafton Correctional Institution ("GCI"). (Doc. No. 1.) Plaintiff alleged violations of the Rehabilitation Act of 1973 ("RA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, and the Eighth Amendment to the U.S. Constitution. (*Id.*)

On December 26, 2019, Defendant filed a Motion to Dismiss the Complaint pursuant to Fed.

R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. No. 7.) Plaintiff filed a Brief in Opposition to the motion on January 15, 2020. (Doc. No. 8.) On January 24, 2020, Defendant filed its Reply in support of its Motion to Dismiss. (Doc. No. 9.)

## II. Factual Allegations

The Complaint (Doc. No. 1) contains the following factual allegations.

Plaintiff is currently an inmate at GCI. (*Id.* at 1.) In 1991, Plaintiff underwent a colostomy, leaving him with a permanent colostomy bag. (*Id.* at 2.) Plaintiff asserts "[a]s a direct result of that surgical colostomy and the resultant disability," he was provided with a single cell in approximately 1991, "which has been designated as 'permanent' under the ADA and in compliance with the Rehabilitation Act of 1973, with written notices being periodically issued . . . ." (*Id.*)

In approximately October 2018, GCI informed Plaintiff he would no longer be provided with a single cell. (*Id.*) Plaintiff was moved to a double occupancy cell in approximately December 2018. (*Id.*) Plaintiff maintains "[a]s a direct result of his disability," Plaintiff "is forced to wash out his colostomy bag in the cell sink, and occasionally has leakage and spills." (*Id.*) As a result of washing out his colostomy bag in the sink and occasional leakage, Plaintiff "has been threatened with physical violence from his cellmates, subjected to threats, intimidation, yelling, screaming, slamming things around the cell, and repeated threats upon his life by his cellmates." (*Id.*) When Plaintiff complained to GCI officials, he was told to "'deal with it.'" (*Id.*) Plaintiff asserts the removal of his single-cell restriction "was not affected as a result of any legitimate institutional security concern, and moreover was discriminatory in that other GCI prisoners [have] retained their single cell accommodations, including others with colostomy bags." (*Id.* at 3.)

Plaintiff further alleges GCI Health Care Administrator David Less retaliated against him in

response to his complaints about the removal of his single-cell restriction by informing him his colostomy supplies "would be withheld from him, such supplies including special cleaners and skin protections, as well as inflammation injections all necessary as attendant to a permanent colostomy." (*Id.*)

Plaintiff alleges that "[a]s a direct result of being forced to endure a resntful [sic] and violent cellmate, [Plaintiff] has been unable to properly access the restroom, or properly clean himself, thus elevating the need for the cleaning and protective supplies which have been limited to him as a direct result of his complaining about taking away his ADA accommodation single cell restriction." (*Id.*) Plaintiff maintains he has "suffered threats, retaliation, intimidation, loss of sleep, fear, as well as unnecessary skin irritation, rashes, discomfort, humiliation and physical, psychological and emotional stress and trauma as a direct and proximate result of the removal of his ADA accommodation and Rehabilitation Act compliance single-cell restriction, without any legitimate need to do so, as well as from the retaliation from the resultant attempts to complain and to have it reinstated." (*Id.*)

Plaintiff asserts he has exhausted his administrative remedies. (*Id.*)

The Complaint alleges violations of the ADA and RA, § 1983, and the Eighth Amendment. With regard to his ADA and RA claims, Plaintiff claims Defendant's actions and conduct "constitutes the deprivation of adequate toilet and washing facilities to him, as well as the deprivation of adequate ability to sleep," that "access to a toilet, to adequate hygiene and cleaning facility and to adequate sleep" are "major life activities" within the meaning of the ADA and RA, and that interference with these "major life activities" constitutes violations of the ADA and RA. (*Id.* at 4.) Plaintiff further claims Defendant's actions and conduct constitute discrimination and

retaliation under § 1983. (*Id.* at 4-5.)

Plaintiff seeks declaratory relief, injunctive relief, including immediate reinstatement of his "permanent single-cell restriction and a moratorium on any future interference therewith," "continued provision of all necessary colostomy supplies," and protection from retaliation, compensatory damages in an amount not less than $100,000.00, recovery of Plaintiff's costs and expenses, and that the costs of the action be taxed against Defendant. (*Id.* at 5-6.)

### III. Motion to Dismiss

**A.  Standard of Review**

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge whether the Complaint raises a right to relief above the speculative level "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555 556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

With respect to pleadings filed by *pro se* plaintiffs, while such pleadings are "'liberally construed' and held to less stringent standards than formal pleadings drafted by lawyers, pro se plaintiffs must still meet basic pleading requirements, and courts are not required to conjure allegations on their behalf." *Stansell v. Grafton Corr. Inst.*, Case No. 1:17-cv-1892, 2019 WL 6609676, at *2 (N.D. Ohio Dec. 5, 2019) (citing and quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (citing *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

**B.     Procedural Grounds**

The Court first addresses Plaintiff's arguments that Defendant's motion to dismiss is barred on procedural grounds. *Id.*

5

1.  **The effect of the Court's prior review under 28 U.S.C. § 1915**

Plaintiff asserts the Court's review under 28 U.S.C. § 1915 utilizes the same standard as when deciding whether to dismiss an action under Fed. R. Civ. P. 12(b)(6). (Doc. No. 8 at 3.) Plaintiff argues, "Upon that review, this Court found that Plaintiff's Complaint does, in fact, on its face, state a claim upon which relief can be granted, and granted Plaintiff's Application to Proceed In Forma Pauperis as well as ordering service and summons to issue." (*Id.*) According to Plaintiff, then, "[b]ased upon the law of the case doctrine," "the question as to whether the Complaint, on its face, states a claim upon which relief can be granted, having been conclusively decided, cannot be revisited." (*Id.*)

Defendant responds that the Court's review under § 1915 is "but a preliminary and interlocutory holding, subject to revision at any time prior to the entry of a final judgment." (Doc. No. 9 at 2) (citation omitted). In addition, "the PLRA 'does not obligate the court to screen for every possible defect in a complaint, nor is the screening process infallible.'" (*Id.*) (citations omitted).

This Court recently explained the effect of its prior § 1915 review in another case against the Defendant:

> The Court agrees with the premise of Plaintiff's argument the § 1915(e) standard is indeed "virtually identical" to the standard applied to a Rule 12(b)(6) motion. However, Plaintiff's conclusion that the Court cannot revisit this ruling does not follow.
>
> A § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment. Accordingly, the Court is not precluded from considering Defendant's motion on this ground.

*Stansell*, 2019 WL 6609676, at *3 4 (footnotes omitted).

6

### 2. Res Judicata

In the alternative, Plaintiff asserts *res judicata* prevents this Court from reviewing this question, as it has already been decided. (Doc. No. 8 at 3.) Defendant responds that *res judicata* is inapplicable, as there has been "no final judgment . . . regarding Plaintiff's claimed need for a single cell assignment" and *re judicata* only "precludes the re-litigation of issues that were raised and *finally resolved* in a prior action." (Doc. No. 9 at 3) (emphasis in original).

"The doctrine of res judicata encompasses two distinct concepts: claim preclusion and issue preclusion." *Greenlee v. Sandy's Towing & Recovery, Inc.*, Case No. 17-3080, 2018 WL 3655961, at *2 (6th Cir. 2018) (citing *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 n.5 (6th Cir. 2006)). As the Sixth Circuit explained in *Rawe*:

> The Supreme Court in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), explained the difference between issue preclusion and claim preclusion, both of which are frequently referred to simply as "res judicata." *Migra* explained:
>
>> Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.... This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.
>
> *Id.* (citation omitted).

462 F.3d at 528 n.5. "'A final judgment on the merits of an action precludes the parties or their

privies from relitigating issues that were or *could have been raised* in that action.'" *Id.* (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (emphasis in original).

Here, there has been no final judgment on the merits. Therefore, *res judicata* does not apply.

**C.  Constitutional Claims**

Plaintiff asserts claims against Defendant pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. (Doc. No. 1.) Defendant maintains "Plaintiff's constitutional claims are barred by both the Eleventh Amendment and § 1983." (Doc. No. 7 at 4.)

"For a defendant to be liable under § 1983, the defendant must be a 'person' for the purpose of § 1983." *Dunikowski v. Ohio Dept. of Rehab. and Corr.*, Case No. 1:18 CV 2576, 2019 WL 2717954, at *2 (N.D. Ohio June 28, 2019). In *Will v. Michigan Dept. of State Police*, the United States Supreme Court held "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71 (1989). In addition, the Eleventh Amendment bars actions against a State under § 1983 unless the State waived its immunity or Congress "exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* at 66. In passing § 1983, Congress did not exercise its power to override the States' immunity under the Eleventh Amendment. *Id.*

GCI "is not a legal entity capable of being sued under § 1983." *Moon v. Richland Corr. Inst.*, Case No. 1:19 CV 1250, 2019 WL 2359196, at *1 (N.D. Ohio June 4, 2019) (citing *Miles v. Richland Corr. Inst.*, Case No. 1:14-CV-01648, 2015 WL 366898, at *3 (N.D. Ohio Jan. 27, 2015) (citing *Brown v. Imboden*, Case No. 1:11 CV 529, 2011 WL 3704952, at *2 (N.D. Ohio Aug. 23, 2011) ("finding that Mansfield Correctional Institution is not *sui juris* and, therefore, not capable of being sued under § 1983." ))). *See also Dunikowski*, 2019 WL 2717954 , at *2 (citing *Moon*, 2019

8

WL 2359196, at *1). Therefore, the claims against GCI "are more properly construed against" the Ohio Department of Rehabilitation and Correction ("ODRC"). *Brown*, 2011 WL 3704952, at *2.

ODRC is not a "person" under § 1983. *Price v. Ohio Dept. of Rehab. and Corr.*, Case No. 2:19-cv-3442, 2019 WL 3891868, at *2 (S.D. Ohio Aug. 16, 2019) (citing *Diaz v. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013)). *See also Parker v. Mich. Dept. of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) ("We note, nonetheless, that the court properly found that the MDOC is not a 'person' within the meaning of 42 U.S.C. § 1983.").

Furthermore, ORDC, an agency of the State of Ohio, is immune from suit under the Eleventh Amendment unless the State of Ohio has "waived its sovereign immunity or consented to be sued in federal court." *Moon*, 2019 WL 2359196, at *1 (citing *Will*, 491 U.S. at 71). *See also Garcia v. Lorain Cty. Court of Common Pleas*, Case No. 1:18-cv-00944, 2019 WL 1755649, at *3 (N.D. Ohio Apr. 19, 2019) ("It is clear that PCI and ODRC qualify as arms of the State of Ohio.") (collecting cases). The State of Ohio has not waived its immunity under the Eleventh Amendment to being sued in federal court. *Moon*, 2019 WL 2359196, at *1 (citing *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). *See also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) ("But we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *Moon*, 2019 WL 2359196, at *1 (dismissing suit brought against Richland Correctional Institute pursuant to § 1983 for injunctive and monetary relief); *Garcia*, 2019 WL 1755649, at **2-4 (finding ORDC and Pickaway Correctional Institution immune from suit for

9

declaratory relief and damages).[1]

Because GCI is not an entity capable of being sued under § 1983, ODRC is not a "person" under § 1983, and ODRC is immune from suit under the Eleventh Amendment, the Court recommends Defendant's motion to dismiss Plaintiff's constitutional claims be GRANTED.

**D.  ADA/RA Claims**

The Supreme Court explained in *U.S. v. Georgia*:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.). A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). The Act defines "'public entity'" to include "any State or local government" and "any department, agency, ... or other instrumentality of a State," § 12131(1). We have previously held that this term includes state prisons. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Title II authorizes suits by private citizens for money damages against public entities that violate § 12132. *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).
>
> In enacting the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment...." 42 U.S.C. § 12101(b)(4). Moreover, the Act provides that "[a] State shall not be immune under the eleventh amendment to

---

[1] The Court is aware of other cases dismissing only the claims for monetary relief and allowing claims for injunctive relief against state agencies to proceed. *See, e.g., Vick v. Core Civic*, 329 F. Supp. 3d 426, 450 (M.D. Tenn. 2018) (allowing claims for injunctive and prospective relief pursuant to § 1983 against the Tennessee Department of Corrections to proceed). However, the Court follows the Supreme Court in *Pennhurst* and *Seminole Tribe*, and the precedent of this district, in finding ORDC immune from suit regardless of the relief sought.

10

> the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." § 12202. We have accepted this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity. *See Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 364, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).

546 U.S. 151, 153 54 (2006). With respect to ADA claims for damages, the Supreme Court found "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."[2] *Id.* at 159 (emphasis in original).

### 1. Claims for Declaratory and Injunctive Relief

In the Sixth Circuit, in order to "establish a prima facie case of intentional discrimination under Title II of the ADA, Plaintiff must show: (1) he has a disability; (2) he is otherwise qualified; and (3) he "was being excluded from participation, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citation omitted). As the Sixth Circuit explained:

> In other words, the plaintiff must show that the defendant took action because of the plaintiff's disability, i.e., the "[p]laintiff must present evidence that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Turner*, 195 Fed.Appx. at 353; *see also Tucker*, 539 F.3d at 533 (holding that to make out a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must "establish[ ] that he or she was intentionally ... subjected to discrimination ...

---

[2] As Justice Stevens's concurring opinion in *Georgia* noted, "[T]he state defendants have correctly chosen not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State." 546 U.S. at 160. Given the distinction between claims for injunctive relief and damages against States under the ADA, and the fact Defendant asserts sovereign immunity with respect to Plaintiff's claims for damages under the ADA, the Court addresses Plaintiff's damages claims under the ADA separately, *infra*.

11

> because of his or her disability") (emphasis original, internal quotation marks and brackets omitted); *Dillery v. City of Sandusky*, 398 F.3d 562, 568 (6th Cir. 2005) (rejecting a plaintiff's ADA claim for intentional discrimination because the plaintiff could not show that the defendants' actions were "because of her disability"). "Further, the plaintiff must show that the discrimination was intentionally directed toward him or her in particular." *Tucker*, 539 F.3d at 532 (emphasis original).

*Id.*

To show a violation of the RA, "[P]laintiff must prove he is an otherwise qualified handicapped person who is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under a program which is receiving federal funding, solely by reason of his handicap." *Thompson v. Williamson Cty, Tn.*, 219 F.3d 555, 557 n. 4 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)).

"Generally speaking, because both the [RA] and the ADA prohibit discrimination on the basis of disability, the jurisprudence regarding both statutory schemes has developed in tandem, and the claims are frequently considered as coextensive with each other." *Vick v. Core Civic*, 329 F. Supp. 3d 426, 442 (M.D. Tenn. 2018) (citing and quoting *Thompson*, 219 F.3d at 557, and *Andrews v. Ohio*, 104 F.3d 803, 807 (6th Cir. 1997)). However, there are "important distinctions between the two statutes": (1) the Eleventh Amendment does not bar RA claims against the state; and (2) "the 'solely because' language in the [RA] imposes a higher burden of proof upon the plaintiff." *Id.* (citations omitted).

Defendant asserts that while it "does not concede that Plaintiff meets the first two elements

of his prima facie case under the ADA,"[3] "Plaintiff's Complaint fails to allege that he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under a program solely because of his disability."[4] (Doc. No. 7 at 9.)

Plaintiff responds:

> Notably, the defendant completely fails to acknowledge, or address, the fact that Plaintiff had been provided with a single-cell Accommodation for his undisputed disability since 1990 and the removal of the ADA Accommodation was not effected by any medical personnel, or based upon any decision that the ADA Accommodation was no longer medically necessary, but rather by an administrator, and in retaliation for another prisoner brining suit for the same violation. (See, **Stansell v Grafton Corr. Inst.**, N.D. Ohio). The defendant's attempts to claim that Plaintiff is not disabled and does not have a need for an ADA Accommodation single-cell is belied by the reality that it was deemed necessary for almost thirty years, and was removed for retaliatory purposes, without any examination or finding that it was not necessary and more telling, without any change in Plaintiff's condition or status.

(Doc. No. 8 at 5-6) (emphasis in original).[5]

The Court finds Plaintiff failed to allege any facts in his Complaint showing he was

---

[3] But neither does Defendant assert that Plaintiff's Complaint fails to plead allegations showing he does not meet the first two elements of a prima facie case under the ADA. The Court will not make any arguments for the Defendant, and for purposes of this motion to dismiss determines any such arguments waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Reg. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

[4] In *Anderson*, the Sixth Circuit removed "solely" from its test for intentional discrimination under Title II. 798 F.3d at 357 n.1.

[5] The Court notes Plaintiff failed to plead in his Complaint that removal of his single-cell status was in retaliation for another prisoner filing a lawsuit for "the same violation." (Doc. No. 1.)

13

discriminated against *because of his disability*. In his Complaint, Plaintiff plead that the removal of his single cell "was not effected as a result of any legitimate institutional security concern, and moreover was discriminatory in that other GCI prisoners ahve [sic] retained their single cell accomocations [sic], *including others with colostomy bags*." (Doc. No. 1 at 3, ¶ 13) (emphasis added). Further, with respect to Plaintiff's allegation that his colostomy supplies and inflammation injections would be withheld from him in retaliation for his complaints about the removal of his single-cell restriction (*id.* at 3, ¶16), to the extent Plaintiff implies this was discrimination based on his disability and intentionally directed towards him in particular, the exhibit he attaches to his Complaint belies those allegations. (Doc. No. 1-3 at 1.) In response to written communication from Plaintiff concerning his colostomy supplies and inflammation injections, GCI Medical Administrator D. Less, RNA, A.H., wrote:

> I never said that the decision to remove the items you use for your colostomy, from formulary, was personal to you. The items were under-utilized across the state [and] thus were removed from the supply formulary. If a colostomy is placed correctly on your skin, the skin should have little contact [with] the stool [and] thus not cause you skin issues. There are enough supplies to last for a while; [sic] based on your usage.
>
> Shots for inflammation are decided by the physician and I cannot comment on what may or may not be ordered for you.

(*Id.*)

As Plaintiff's Complaint fails to show he was discriminated against because of his disability and/or Defendant's conduct was intentionally directed toward him in particular (his ADA claims), or solely because of his disability (his RA claims), the Court recommends Defendant's motion to dismiss Plaintiff's ADA and RA claims be GRANTED.

14

**2. Claims for Damages**

Relying on the United States Supreme Court's decision in *U.S. v. Georgia*, Defendant argues the Eleventh Amendment bars Plaintiff's claims for damages under the ADA. (Doc. No. 7 at 5-7.)

In *Georgia*, the Supreme Court set forth a three-part test courts must use on a claim-by-claim basis in determining whether the Eleventh Amendment bars damages claims under Title II of the ADA: "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 546 U.S. at 159.

For the reasons discussed *supra*, the Court finds because Plaintiff's Complaint fails to show he was discriminated against because of his disability (his single-cell accommodation claim) or Defendant's conduct was intentionally directed toward him in particular (his colostomy supplies/inflammation injections claim), he has failed to allege the State's conduct violated Title II. Therefore, the Court need not reach the remaining elements of the test set forth in *U.S. v. Georgia* as to whether the Eleventh Amendment bars Plaintiff's ADA claims for damages. *Zibbell v. Mich. Dept. of Human Servs.*, 313 F. App'x 843, 847-48 (6th Cir. 2009) ("'[U]nder *Georgia*, the constitutional question abrogation of Eleventh Amendment immunity will be reached only after finding a viable claim under Title II.' Because the plaintiffs there had failed to state such a viable claim, we concluded . . . that 'we need not reach the remaining prongs of the *Georgia* analysis.'") (citing and quoting *Hass v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 672-73 (6th Cir. 2007)) (internal citation omitted).

For the reasons set forth above, the Court recommends the Court GRANT Defendant's

motion to dismiss Plaintiff's ADA and RA claims in their entirety.

## IV. Conclusion

Accordingly, and for all the reasons set forth above, it is recommended Defendant's Motion to Dismiss (Doc. No. 7) be GRANTED.

Date: April 1, 2020

s/ *Jonathan D. Greenberg*
Jonathan D. Greenberg
U.S. Magistrate Judge

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See* <u>United States v. Walters</u>**, 638 F.2d 947 (6th Cir. 1981);** <u>Thomas v. Arn</u>**, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**